**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

HARTFORD LIFE INS. CO. and      )
HARTFORD INS. CO. OF ILLINOIS,  )
                                )
                  Plaintiffs,   )
                                )
            v.                  )   No. 11 C 2209
                                )
Deborah J. Solomon, in her      )
capacity as the Independent     )
Administrator of the ESTATE OF  )
DAVID A. SOLOMON, 321 HENDERSON )
RECEIVABLES L.P., J.G. WENTWORTH )
ORIGINATIONS, LLC, J.G.         )
WENTWORTH, INC., and J.G.       )
WENTWORTH STRUCTURED SETTLEMENT )
FUNDING II,LLC,                 )
                                )
                  Defendants.   )


**MEMORANDUM OPINION**

Before the court are the parties' briefs on the question of our subject-matter jurisdiction over counterclaims and cross-claims filed by interpleader defendant Deborah J. Solomon in her capacity as the independent administrator of the Estate of David A. Solomon (hereinafter, the "Estate").  For the reasons explained below, we conclude that we do not have subject-matter jurisdiction over the Estate's claims pursuant to the Rooker-Feldman doctrine.  Because we cannot entertain the Estate's claims, we will exercise our discretion to dismiss this interpleader action.

**BACKGROUND**

In 1995, David Solomon settled a personal injury lawsuit with the defendant in that case and his insurer (interpleader plaintiff Hartford Insurance Company of Illinois (hereinafter, "Hartford Illinois")) for an upfront payment and Hartford Illinois's promise to pay an additional $45,000 on March 31, 2011. (<u>See</u> Release and Settlement Agreement, dated May 9, 1995, attached as Ex. A to Def.'s Counterclaim & Cross-claim.) Shortly after the parties executed the settlement agreement, Hartford Life Insurance Company (hereinafter, "Hartford Life")[1] agreed to pay the settlement amount to Solomon on Hartford Illinois's behalf pursuant to an annuity contract. (<u>See</u> Annuity Contract, dated May 15, 1995, attached as Ex. B to Def.'s Counterclaim & Cross-claim.) Both the settlement agreement and the annuity contract provided that David Solomon's estate would receive the $45,000 payment in the event of his death prior to March 31, 2011. (<u>See</u> Release and Settlement Agreement ¶ 5; Annuity Contract at 5 (annuity application identifying the "Estate of David Solomon" as the "Beneficiary").) The settlement agreement further provided that the payment "shall not be subject to assignment, transfer or encumbrance, except as provided herein." (<u>See</u> Release and Settlement Agreement ¶ 9.) There is no other provision in the settlement agreement dealing with assignment, transfer, or encumbrance.

---

[1] We will refer to Hartford Illinois and Hartford Life collectively as "Hartford" except as otherwise noted.

In June 2004, Solomon agreed to sell the right to receive the $45,000 payment to cross-defendant 321 Henderson Receivables, L.P. ("321 Henderson").[2] (See Purchase Agreement, dated June 8, 2004, attached as Ex. D. to Def.'s Counterclaim and Cross-claim.) Pursuant to the Illinois Structured Settlement Protection Act, 215 ILCS 153/1 et seq., 321 Henderson petitioned a state court to approve the transfer. (See Petition Seeking Approval of a Transfer of Structured Settlement Payment Rights, attached as Ex. E to Def.'s Counterclaim and Cross-claim.) David Solomon and Hartford participated in the state-court proceeding initiated by 321 Henderson's petition. (See Order Approving Transfer, dated Oct. 29, 2004, attached as Ex. F to Def.'s Counterclaim & Cross-claim.) The order approving the transfer directed Hartford to make the $45,000 payment to 321 Henderson:

> ORDERED that Hartford Life Insurance Company and Hartford Insurance Company of Illinois (collectively "Hartford") shall make payment of: One lump sum payment in the amount of $45,000.00 on or about 3/31/2011, (the "Assigned Payment") to Transferee [321 Henderson] . . . .

> ORDERED that the death of the Payee prior to the due date of the last of the Assigned Payment shall not affect the transfer of the Assigned Payment from Payee [David Solomon] to 321 Henderson Receivables, L.P., and Payee understands he is giving up his rights, and the rights of his heirs, successors and/or beneficiaries, to the Assigned Payment . . . .

---

[2] 321 Henderson and the other interpleader defendants besides the Estate — J.G. Wentworth Originations, LLC, J.G. Wentworth, Inc., and J.G. Wentworth Structured Settlement Funding II, LLC — are corporate affiliates. We will refer to these parties collectively as "Wentworth" except as otherwise noted.

> ORDERED that this order is binding on any and all
> successors of the Payee, of other protected parties, and
> of the Transferee . . . .

(Id. at 3, 5.)  After David Solomon died on April 3, 2008, the

Estate filed in probate court citations to recover assets (namely,

the $45,000 payment that Hartford had promised to pay Solomon)

against the defendants in this case, among others.  (See Estate's

Counterclaim and Cross-claim ¶ 18); see also Illinois Probate Act,

755 ILCS 5/16-1 (authorizing such citations to be served on persons

the administrator believes to be controlling personal property

belonging to the estate).  The Estate's theory is that the payment

was not transferrable in light of the settlement agreement's anti-

assignment clause, and that the order approving the transfer was

tainted by 321 Henderson's false statement that David Solomon had

no dependents.  (See Estate's Counterclaim ¶¶ 33-34, 39-40;

Estate's Cross-claim ¶¶ 26, 28.)

Shortly after the Estate filed its petition in the probate

court, Hartford initiated this interpleader action.  In connection

with its complaint, Hartford sought and obtained an *ex parte*

restraining order that effectively stayed the citation proceedings.

See 28 U.S.C. § 2361 (authorizing such restraining orders).  The

Estate answered Hartford's interpleader complaint and filed a

counterclaim and a cross-claim against Hartford and Wentworth,

respectively.  The Estate's three-count counterclaim asserts claims

for breach of the settlement agreement (Count I, against Hartford

Illinois), breach of the annuity contract (Count II, against Hartford Life), and breach of an alleged duty to apprise the state court of the settlement payment's non-transferability (Count III, against both Hartford parties). The Estate's two-count cross-claim asserts a claim for breach of an alleged duty to inform the state court that the payment was non-transferable and that David Solomon had dependents (Count I), and asks us to "invalidate" the transfer on that basis (Count II). After Hartford and Wentworth filed dispositive motions, we raised the issue of our subject-matter jurisdiction under the Rooker-Feldman doctrine and requested briefs on that issue. (See Order, dated Mar. 21, 2012, Dkt. 55.) We have reviewed the parties' submissions and we are prepared to rule.

### DISCUSSION

**A.** **Rooker-Feldman's Impact on Solomon's Counterclaims and Cross-claims**

The Rooker-Feldman doctrine is premised on the Supreme Court's exclusive federal-appellate jurisdiction over state-court judgments. See Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 283 (2005) (citing 28 U.S.C. § 1257). The doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Id. at 284. It bars claims asking "a federal court to overturn an adverse state court

judgment," and claims that are "inextricably intertwined" with such a judgment. <u>Brown v. Bowman</u>, 668 F.3d 437, 442 (7th Cir. 2012) (citation and internal quotation marks omitted). "Once it is determined that a claim is inextricably intertwined, we must then inquire whether 'the plaintiff [did or] did not have a reasonable opportunity to raise the issue in state court proceedings.' If the plaintiff could have raised the issue in state court, the claim is barred under <u>Rooker</u>-<u>Feldman</u>." <u>Id.</u> (quoting <u>Brokaw v. Weaver</u>, 305 F.3d 660, 667 (7th Cir. 2002)) (internal citation omitted).

Count II of the Estate's cross-claim against Wentworth explicitly asks us to "invalidate" the transfer that the state court approved. (<u>See</u> Estate's Cross-claim at 22 (asking us to "[i]nvalidate any purported transfer of the Annuity Contract or the right to receive payment thereunder").) As for the Estate's other claims, we indicated in our order raising the <u>Rooker</u>-<u>Feldman</u> issue that were inclined to find that those claims are "inextricably intertwined" with the state-court judgment:

> Counts I and II of the Estate's counterclaim allege that Hartford breached the settlement agreement, and the annuity contract, by not paying the Estate $45,000 on March 31, 2011. It is difficult to see how we can rule in the Estate's favor on this issue without "review[ing] and reject[ing]" the state-court's order approving the transfer to Wentworth. <u>Exxon</u>, 544 U.S. at 284. The Estate's claims do not appear to allege an injury "independent" of the judgment: Solomon could not have transferred the payment without the state court's approval. <u>See</u> 215 ILCS 153/15; <u>see also</u> <u>Kelley v. Med-1 Solutions, Inc.</u>, 548 F.3d 600, 605 (7th Cir. 2008) ("Because defendants needed to prevail in state court in order to capitalize on the alleged fraud, the FDCPA

> claims that plaintiffs bring ultimately require us to
> evaluate the state court judgments."). The Estate also
> contends that Hartford and Wentworth misled the state
> court, arguing that they breached their duty to inform
> the court that the settlement payment was (according to
> the Estate) non-transferrable and that Solomon had minor
> children. (<u>See</u> Def.'s Counterclaim & Cross-claim at 15-
> 18 (Count III against Hartford), 18-22 (Counts I and II
> against Wentworth).) In <u>Kelley</u>, our Court of Appeals
> rejected the plaintiff's argument that the defendants'
> alleged misrepresentations to the state court supported
> a claim independent of the state court's judgment. <u>See</u>
> <u>id.</u> ("We could not determine that defendants'
> representations and requests related to attorney fees
> violated the law without determining that the state court
> erred by issuing judgments granting the attorney fees.").

(<u>See</u> Order, dated Mar. 21, 2012, at 4-5.) No party has directly

challenged this analysis. Consistent with the reasoning in our

prior order, we conclude that the Estate's claims are "inextricably

intertwined" with the state court judgment. Moreover, we are not

aware of any impediment that would have prevented the participants

in the earlier state-court proceeding from raising the issues that

the Estate has raised in this case. Indeed, the premise of the

Estate's claims is that Hartford and Wentworth had a *duty* to raise

those issues. The real question, we think, is whether <u>Rooker</u>-

<u>Feldman</u> applies given the fact that the Estate was not a party to

that proceeding.

The general rule is that the <u>Rooker</u>-<u>Feldman</u> doctrine does not

bar a federal lawsuit brought by a nonparty to the earlier state-

court proceeding. <u>See</u> <u>Johnson v. DeGrandy</u>, 512 U.S. 997, 1006

(1994). The <u>DeGrandy</u> Court reasoned that <u>Rooker</u>-<u>Feldman</u> did not

apply to the plaintiff in the federal lawsuit because, as a

nonparty to the earlier proceeding, it "was in no position to ask this Court to review the state court's judgment . . . ." Id. In Lance v. Dennis, 546 U.S. 459, 465-66 (2006), the Supreme Court held that the doctrine did not deprive the district court of jurisdiction in a case filed by individuals considered in privity with the "state-court loser" under preclusion law. See id. ("The Rooker-Feldman doctrine does not bar actions by nonparties to the earlier state-court judgment simply because, for purposes of preclusion law, they could be considered in privity with a party to the judgment."). Lance involved the privity between the plaintiffs as citizens of Colorado and the Colorado General Assembly, the "loser" in prior state-court litigation. See id. at 465; see also City of Tacoma v. Taxpayers of Tacoma, 357 U.S. 320, 340-41 (1958) ("The final judgment of the Court of Appeals was effective, not only against the State, but also against its citizens, including the taxpayers of Tacoma, for they, in their common public rights as citizens of the State, were represented by the State in those proceedings, and, like it, were bound by the judgment."). Unlike DeGrandy, the Court's ruling in Lance was not expressly based upon the plaintiffs' inability to request an appeal of the state-court judgment. Cf. DeGrandy, 512 U.S. at 1006. Instead, the Court reasoned that incorporating preclusion principles into the Rooker-Feldman doctrine would risk "turning that limited doctrine into a uniform *federal* rule governing the preclusive effect of state-court judgments, contrary to the Full Faith and Credit Act." Lance, 546

U.S. at 1203 (emphasis in original); <u>see also</u> Full Faith and Credit
Act, 28 U.S.C. § 1738 (authenticated records of state judicial
proceedings "shall have the same full faith and credit in every
court within the United States . . . as they have by law or usage
in the courts of such State . . . from which they are taken"). But
as we noted in our earlier order, the <u>Lance</u> Court declined to limit
the doctrine to claims brought by an actual party to the earlier
proceeding in language that is highly relevant to this case: "[i]n
holding that <u>Rooker</u>–<u>Feldman</u> does not bar the plaintiffs here from
proceeding, we need not address whether there are any
circumstances, however limited, in which <u>Rooker</u>–<u>Feldman</u> may be
applied against a party not named in an earlier state proceeding —
*e.g., where an estate takes a de facto appeal in a district court
of an earlier state decision involving the decedent.*" <u>Id.</u> at 466
n.2 (emphasis added).

The thrust of this dicta seems to be that there may be
situations where the relationship between the parties in the
federal and state proceedings is so close that permitting the
federal claim to proceed would be an end-run around <u>Rooker</u>–<u>Feldman</u>.
<u>Cf.</u> <u>Kamilewicz v. Bank of Boston Corp.</u>, 100 F.3d 1348, 1351 (7th
Cir. 1996) (stating in dicta that <u>Rooker</u>-<u>Feldman</u> "may apply when
the non-parties occupy positions functionally identical to the
parties (for example, when a person whose property has been
condemned by a city retaliates with a suit against the mayor) . .
. .").  The most relevant persuasive authority appears to be

McCormick v. Braverman, 451 F.3d 382 (6th Cir. 2006). In
McCormick, the Sixth Circuit Court of Appeals held that "a person
in privity with the actual party who loses in state court may be
deemed a state-court loser." Id. at 396. McCormick is difficult
to square with Lance insofar as it announced a general rule that
"privity" with the state-court loser is sufficient to make a
nonparty subject to Rooker-Feldman.[3] Cf. Lance, 546 U.S. at 465-
66. But McCormick can be construed more narrowly to permit a
limited form of privity analysis along the lines suggested by the
footnote in Lance. The plaintiff in McCormick was the daughter of
the "state-court loser" and was seeking to overturn (among other
things) an order of receivership affecting property in which she
claimed an interest by virtue of an agreement with her mother. See
McCormick, 451 F.3d at 395; see also id. at 396 n.8 (stating that
she was a "successor in interest" to the property). The McCormick
court reasoned that it "would be inconsistent to disallow the party
in the state suit to raise a federal claim but to allow his privy
to bring the exact same claim." Id. at 396; see also id. ("A state
party may not circumvent the Article III jurisdictional provisions
simply by substituting a privy's name for his own in the federal
claim.").

----

[3] McCormick was decided several months after Lance, but it does not
discuss or cite that case.

We believe that <u>McCormick</u> is well-reasoned and consistent with <u>Lance</u> insofar as its holding would prohibit a state-court loser's successor-in-interest from pursuing a *de facto* appeal in federal court.  We also conclude that its reasoning applies here, even though this case is atypical in several respects.

*First*, the underlying state proceeding was not adversarial: David Solomon and 321 Henderson together sought court approval and Hartford was essentially indifferent about who was owed the $45,000 payment.  Nevertheless, we think that the approval proceedings were "judicial."  <u>See</u> <u>Brown</u>, 668 F.3d at 442 (<u>Rooker</u>-<u>Feldman</u> only applies to the decisions of a state tribunal acting in a judicial capacity).  The state court did not announce a rule of general application.  <u>Cf.</u> <u>id.</u> ("An alleged injury is 'independent' if the state court was acting in a non-judicial capacity when it affected the plaintiff — for example, if the state court was 'promulgating rules regulating the bar.') (quoting <u>Edwards v. Ill. Bd. of Admissions to Bar</u>, 261 F.3d 723, 729 (7th Cir. 2001)).  Instead, it decided that the particular transaction before it was in Solomon's best interests and complied with applicable law.  <u>See</u> 215 ILCS 153/15; <u>see also</u> <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462, 479-82 (1983) (concluding that the lower court's ruling on the petitioner's application for bar admission was judicial even though it "did not assume the form commonly associated with judicial proceedings"); <u>Hale v. Committee on</u>

<u>Character and Fitness for State of Illinois</u>, 335 F.3d 678, 684 (7th Cir. 2003) (similar).

*Second*, David Solomon did not lose in the conventional sense. But if he had had second thoughts about the deal he struck with Wentworth and attempted to sue in federal court to overturn the order approving the transfer, he could not have avoided <u>Rooker</u>-<u>Feldman</u> by claiming that he was not a "state-court loser." The transfer-approval order at issue in this case is comparable to the agreed order in <u>Johnson v. Orr</u>, 551 F.3d 564, 568 (7th Cir. 2008). The plaintiff in <u>Johnson</u> purchased delinquent property taxes, which would have entitled him to a tax deed for the affected property after satisfying certain conditions. <u>Id.</u> at 566. Before the plaintiff petitioned a circuit court for the tax deed, Cook County initiated its own lawsuit to invalidate the sale on the ground that the purported delinquency was in error because the property was tax exempt. <u>Id.</u> at 567. That lawsuit terminated in an agreed order rescinding the sale and returning the purchase price to the plaintiff with costs and interest. <u>Id.</u> Notwithstanding the agreed order, the plaintiff later petitioned a state court to obtain a tax deed for the subject property. <u>Id.</u> When the state court failed to grant his petition, the plaintiff sued the County in federal court alleging numerous federal and state claims. <u>Id.</u> The district court dismissed his complaint under <u>Rooker</u>-<u>Feldman</u>, among other grounds, and our Court of Appeals affirmed. Particularly relevant

to this case, the <u>Johnson</u> Court rejected the plaintiff's argument that he was not a state-court loser. <u>Id.</u> at 568-69. The thrust of his complaint was that the agreed order was erroneous: according to the plaintiff the property was not tax exempt and the agreed order falsely stated otherwise. <u>Id.</u> at 569. Because the plaintiff was effectively seeking to overturn the agreed order in a federal district court, <u>Rooker</u>-<u>Feldman</u> barred his claims. <u>Id.</u> ("Mr. Johnson's relief lies in the Illinois courts, and he cannot avoid <u>Rooker</u>-<u>Feldman</u> simply by bypassing state court."). The same reasoning would apply if Solomon had attempted to overturn the transfer-approval order during his lifetime. And because Solomon could not have pursued *de facto* appeal of the order in a federal district court, neither can the Estate: "[a]lthough the administrator has a fiduciary duty to those individuals interested in the estate, such as the creditors and the heirs, the administrator nonetheless stands in the shoes of the decedent and acquires the same interest in the decedent's property that the decedent had, but no more." <u>See</u> <u>In re Estate of Cappetta</u>, 733 N.E.2d 426, 434 (Ill. App. Ct. 2000) (citing <u>In re Estate of Wallen</u>, 633 N.E.2d 1350, 1360 (Ill. App. Ct. 1994) and <u>In re Estate of Ozier</u>, 587 N.E.2d 77, 80-81 (Ill. App. Ct. 1992)) (internal citations omitted).[4]

_____

[4] This is so even though, as the Estate points out, the decedent's interests during his life may be at odds with the administrator's interests after his death. <u>See</u> <u>In re Estate of Cappetta</u>, 733 N.E.2d at 434 (acknowledging an administrator's fiduciary duties to creditors and heirs, but holding that the

*Third*, Hartford (not Solomon) filed this case in federal court and obtained an injunction that effectively compelled the Estate to pursue its claims in this court. We think this fact is relevant to whether we should abstain in this case, <u>see</u> *infra*, but we do not believe that it affects the <u>Rooker</u>-<u>Feldman</u> analysis. Even though the Estate did not actively seek a federal forum for its claims, it is still asking us to review and overturn a state-court order. In sum, we conclude that we lack subject-matter jurisdiction over the Estate's counterclaim and cross-claim.

**B.   Hartford's Interpleader Complaint**

Our prior order asked the parties to consider the impact on Hartford's interpleader complaint of a ruling dismissing the Estate's claims under <u>Rooker</u>-<u>Feldman</u>. (<u>See</u> Order, dated Mar. 21, 2012, at 6.) The Estate does not contest Hartford's argument that we have jurisdiction over its interpleader complaint. As the interpleader plaintiff, Hartford is technically indifferent about the propriety of the state-court order. It is only seeking to avoid multiple liability with respect to the $45,000 payment. However, as we just discussed, we lack subject-matter jurisdiction to entertain the Estate's claims to the interpleader funds. Hartford does not view this as a problem because it believes that the Estate should lose on the merits, (<u>see</u> Hartford Reply at 6-7),

administrator's rights are no greater than the decedent's rights during his lifetime).

but it is not our role to decide controversies that are beyond our subject-matter jurisdiction. Hartford cites the Ninth Circuit's decision in <u>Bianchi v. Walker</u>, 163 F.3d 564 (9th Cir. 1998) in support of its argument that we should proceed to decide the merits of the Estate's claims. In <u>Bianchi</u>, the plaintiff filed a "complaint in the nature of a writ of mandamus" against the United States, and the government responded with a counterclaim for interpleader naming the plaintiff and a third-party bank as defendants. <u>Id.</u> at 567. The district court ruled that the bank was entitled to the interpleader funds, but did not enter a final ruling on the plaintiff's mandamus complaint. <u>Id.</u> at 568. On appeal, the Ninth Circuit raised the question of its appellate jurisdiction *sua sponte*. <u>Id.</u> at 568-69. In that connection, the court determined that the district court lacked subject-matter jurisdiction over the mandamus claim because it fell within the exclusive jurisdiction of the United States Court of Federal Claims. <u>Id.</u> at 569. Therefore, the undecided claim did not affect the court's appellate jurisdiction over the claims that the district court had actually decided. <u>Id.</u> ("The district court's decision that the Bank was entitled to the proceeds of the VECP award disposed of the only issues that were properly before it."). As we just stated, the Estate does not dispute that we have jurisdiction over Hartford's interpleader complaint. The question is whether we should exercise that jurisdiction in light of the

fact that we cannot provide relief to one of the interpleader claimants. <u>Bianchi</u> does not provide any guidance on that issue. Hartford also cites <u>Tribble v. Chuff</u>, 642 F.Supp.2d 737 (E.D. Mich. 2009), which is closer to our facts. In that case, the court concluded that it lacked subject-matter jurisdiction over the defendant's counterclaim under <u>Rooker</u>-<u>Feldman</u>. <u>Id.</u> at 746-48. It then proceeded to evaluate the counter-plaintiff's claim under principles of *res judicata* as an alternative basis for summary judgment. <u>Id.</u> at 747 ("Even if [the court had jurisdiction over the defendant's counterclaim], Chuff could not prevail on the issue here, because, as explained more fully below, the doctrine of *res judicata*, or claim preclusion, would defeat his request for relief in this Court."). We respectfully disagree with the <u>Tribble</u> court's reasoning. It would be inappropriate to render any decision on the merits of claims over which we have no subject-matter jurisdiction. Another court must decide whether Hartford and Wentworth are entitled to judgment on the Estate's claims, under preclusion principles or otherwise.

The Estate asks us exercise our discretion to dismiss Hartford's interpleader complaint in favor of further proceedings in the state court. In <u>Koehring Company v. Hyde Construction</u>, 424 F.2d 1200, 1204 (7th Cir. 1970), our Court of Appeals cited with approval the following language from Moore's <u>Federal Practice</u>:

> It should also be within the discretion of the
> interpleader court, sitting as a court of equity, to

decline to exercise jurisdiction when there is an action pending elsewhere wherein the liability of the stakeholder to all claimants may be fairly and conclusively determined. In such a case, the fear of multiple vexation and inconsistent liability which serves as the premise for interpleader relief may be absent; this, in addition to the prior lodging of jurisdiction in another tribunal, may properly convince the interpleader court that it is both safe and prudent to stay its hand. If these conditions are met, there is no reason to believe that the interpleader statute compels the exercise of jurisdiction, thus depriving the court of the discretion traditionally exercised to deny equitable relief when there is another adequate remedy "at law."

Id. at 1204 (quoting 3A Moore, Federal Practice, P22.16(1), at 3138 (2d Ed.1967); see also 7 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1709 (3d Ed.) ("Most federal courts that have faced the question acknowledge that they may decline to exercise jurisdiction over an interpleader action when there is a legitimate reason for doing so, such as the stakeholder's 'unclean hands' or the pendency of another action."). The Koehring Court affirmed the district court's order dismissing the plaintiff's interpleader complaint and observed that the plaintiff could obtain relief in the state court proceedings that were stayed by the district court under 28 U.S.C. § 2361.  Id. at 1205.  Hartford points out that Koehring predates Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976), which created a presumption against abstaining in favor of parallel state court litigation.  See also Huon v. Johnson & Bell, Ltd., 657 F.3d 641, 645 (7th Cir. 2011); AXA Corporate Solutions v.

Underwriters Reinsurance Corp., 347 F.2d 272, 278 (7th Cir. 2003).
But Colorado River and the other cases that Hartford cites do not
involve interpleader.  Consistent with Koehring, the Second Circuit
has held that Colorado River's "exceptional circumstances" test
does not apply in interpleader cases because of the equitable
discretion that courts have traditionally exercised over that
remedy.  See NYLife Distributors, Inc. v. Adherence Group, Inc., 72
F.3d 371, 379-82 (2d Cir. 1995).  We believe that NYLife is
persuasive and conclude that the "exceptional circumstances" test
does not govern our decision whether to abstain in this case.

Koehring did not establish a specific standard governing our
discretion to abstain.  In NYLife, the Second Circuit applied the
standards governing the so-called Wilton/Brillhart abstention
doctrine.  Id. at 382; see also Wilton v. Seven Falls Co., 515 U.S.
277 (1995); Brillhart v. Excess Ins. Co. of Am., 316 U.S. 491
(1942).  Under that doctrine, "district courts possess significant
discretion to dismiss or stay claims seeking declaratory relief,
even though they have subject matter jurisdiction over such
claims."  Envision Healthcare, 604 F.3d 983, 986 (7th Cir. 2010)
(citation and internal quotation marks omitted).  Wilton/Brillhart
abstention is generally, but not exclusively, applied in cases
involving parallel state-court proceedings.  See id. (describing
this scenario as the "classic example," but noting that the
doctrine is not limited to parallel litigation).  In this case,

citation proceedings were underway in state court when Hartford filed this lawsuit and obtained an injunction bringing those proceedings to a halt. All of the defendants in this case were named as defendants in the citation proceeding, (<u>see</u> Estate's Counterclaim and Cross-claim ¶ 18), and it is apparent that the issues in the two proceedings are essentially identical. The "asset" that the Estate sought to recover in the probate court is the same $45,000 payment that is the subject of Hartford's interpleader complaint. Moreover, Hartford does not dispute the Estate's contention that it could have pursued interpleader in the state-court proceeding. <u>See</u> 735 ILCS 5/2-409 (authorizing interpleader on terms comparable to the federal interpleader statute). Arguably, these facts alone would warrant abstention. <u>See</u> <u>Envision</u>, 604 F.3d at 987 (upholding the district court's judgment dismissing a federal declaratory-judgment action that "needlessly" interfered with pending state-court litigation).[5] But the case for abstention is especially compelling here given our lack of subject-matter jurisdiction over the Estate's claims to the interpleader fund. It is important to recall that <u>Rooker</u>-<u>Feldman</u> is based upon our limited subject-matter jurisdiction as a federal district court. <u>See</u> 28 U.S.C. § 1257. It has no bearing on

---

[5]/ <u>See also</u> <u>Brillhart</u>, 316 U.S. at 495 ("Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties. Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided.").

whether the Estate's collateral attack on the transfer-approval order is proper under state law. Cf. Johnson, 551 F.3d at 569 (pointing out that the plaintiff potentially could obtain relief from the agreed order under Illinois law, just not in federal court). The state court where the Estate originally filed its claims is not constrained by Rooker-Feldman and can afford relief to all the parties involved in this dispute.

Finally, Hartford suggests that we should stay (rather than dismiss) this action if we decline to hear its interpleader complaint. (See Hartford Resp. at 5 n.2.) The Koehring court affirmed the district court's order dismissing the interpleader action, see Koehring, 424 F.2d at 1201, and we think that is the appropriate course here. The outcome of the citation proceedings will likely be dispositive of the parties' claims to the $45,000 payment, and we do not foresee any new circumstances that would permit us to exercise jurisdiction over the Estate's claims. Therefore, we will dismiss rather than stay Hartford's interpleader complaint. See Koehring, 424 F.2d at 1201; see also Envision Healthcare, 604 F.3d at 987 (affirming dismissal of a declaratory-judgment action pursuant to Wilton/Brillhart).

## CONCLUSION

We conclude that we lack subject-matter jurisdiction over the Estate's claims, and exercise our discretion to dismiss this interpleader action in favor of further proceedings in state court.

DATE:        November 16, 2012

ENTER:        _____

John F. Grady, United States District Judge